UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMAN TESTER,

     Plaintiff,                           Civil Action No. 12-15171

v.                                    HON.  GERALD E. ROSEN
                                        U.S. District Judge
                                        HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL              U.S. Magistrate Judge
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Norman Tester ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On April 22, 2010, Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging an onset of disability date of March 25, 2010 (Tr. 114, 118).  After the initial denial of the claim, Plaintiff requested an

administrative hearing, held on May 11, 2010 in Falls Church, Virginia (Tr. 41). Administrative Law Judge ("ALJ") Elliott Bunce presided. Plaintiff, represented by Mikel Lupisella, testified by teleconference (Tr. 45-53). Vocational expert ("VE"), Timothy Shaner also testified (Tr. 53-57). On May 12, 2011, ALJ Bunce determined that Plaintiff was not disabled (Tr. 33). On October 15, 2012, the Appeals Council denied review of the claim (Tr. 1-6). Plaintiff filed for judicial review of the final decision on November 26, 2012.

## BACKGROUND FACTS

Plaintiff, born October 8, 1962, was 48 when the ALJ issued his decision (Tr. 33, 114). He completed high school and worked previously as a machine operator, manufacturing associate, and press operator (Tr. 140-141). He alleges disability due to Dupuytren's contracture[1] ("Dupuytren's") and bilateral Carpal Tunnel Syndrome ("CTS") (Tr. 139).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

He last worked in 2009 (Tr. 47). He currently lived in a single family home with his sister, wife, and children (Tr. 46). He stood 6' 2", weighed 220 pounds, and held a valid driver's license (Tr. 46). He limited his driving to local errands (Tr. 47). He was able to perform some cleaning chores but did not grocery shop or do laundry (Tr. 47).

Plaintiff spent most of his waking hours at home watching television (Tr. 47). He

---

[1]Dupuytren's contracture is a hand deformity causing one or more of the fingers to contract. http://www.mayoclinic.com/health/dupuytrens-contracture/DS00732 (last visited November 13, 2013).

reported that he experienced severe pain in both hands (Tr. 48). He experienced elbow pain and difficulty gripping (Tr. 48). He currently took medication for hyperlipidemia (Tr. 48). He reported occasional headaches (Tr. 48).

Plaintiff was unable to lift more than five pounds (Tr. 49). His work related abilities were also compromised by varicose veins in the right leg (Tr. 49). The veins caused problems standing, walking, and sitting (Tr. 49). He needed to elevate the right leg while sitting (Tr. 49).

In response to questioning by his attorney, Plaintiff stated that the vein condition required elevating his right leg above waist level for 20 to 25 minutes several times each day (Tr. 49-50). He previously received psychiatric treatment, but quit taking psychotropic medication due to the side effects (Tr. 50). He was "unhappy 24/7," and experienced "racing thoughts" and sleep disturbances due to hand numbness (Tr. 50, 53). He refrained from taking pain medication because he did not like "being out of it" (Tr. 51). Although hand surgery had been recommended by a treating source, Plaintiff believed that additional surgery would create "more scar tissue" (Tr. 52). He had been told by a treating source that surgery was not available for Dupuytren's until the progressive disease closed his hand altogether (Tr. 52). Plaintiff wore a support stocking for the varicose vein condition and  underwent vascular surgery some time before becoming disabled (Tr. 52).

-3-

### B.   Medical Evidence[2]

### 1.   Treatment Related Records

June, 1998 treatment notes by James A. Martin, M.D. state that Plaintiff required a wrist splint for right-sided CTS (Tr. 196).  An August, 1998 EMG confirmed the presence of bilateral CTS (Tr. 198, 210).  Dr. Martin's November, 1998 treating notes state that Plaintiff experienced depression (Tr. 200). February, 2000 treating notes reference upcoming surgery for the removal of varicose veins (Tr. 206).  Plaintiff underwent  Carpal Tunnel release in January, 2002 (Tr. 207).   In February, 2003, Mune Gowda, M.D. found the presence of mild bilateral Dupuytren's (Tr. 242).  Plaintiff demonstrated a full range of finger motion (Tr. 240).  The following month, Dr. Gowda opined that Plaintiff required restrictions of "no repetitive grasping or gripping associated with excessive flexion or extension" (Tr. 245).

Dr. Martin's March, 2010 treating notes state that Plaintiff experienced renewed symptoms of CTS (Tr. 319).  Plaintiff appeared "alert and cooperative" with appropriate "mood and affect" (Tr. 319).  April, 2010 treating notes reference diagnoses of Dupuytren's and ulnar nerve compression (Tr. 256).  Notes from the same month by hand surgeon Dong Wha Ohm, M.D. state that Plaintiff was currently laid off (Tr. 290).  Plaintiff indicated that symptoms of CTS had returned (Tr. 290).  An examination revealed "mild" tenderness (Tr.

_____

[2]Records significantly predating the alleged onset date of March 25, 2010 are included, where pertinent, for background purposes only.

291).  In May, 2010, Plaintiff again reported renewed symptoms of CTS (Tr. 251).  An EMG showed the presence of CTS of "mild to moderate" severity (Tr. 294).   Imaging studies of both hands were unremarkable (Tr. 264, 296).  Dr. Ohm recommended surgical release for CTS and a possible "enzyme injection for Dupuytren's" (Tr. 298).

July, 2010 treating notes by vascular surgeon Scott A. Garner, M.D. state that Plaintiff experienced relief from varicose vein discomfort with support stockings (Tr. 322).  Plaintiff reported "mild edema" of the ankle "at the end of the day" (Tr. 322).  In October, 2010, Plaintiff reported "moodiness and irritability" (Tr. 337).  He appeared depressed but had an appropriate affect, made good eye contact, and exhibited good grooming (Tr. 337).  Treating notes from the following month state that Plaintiff exhibited an appropriate mood and affect" (Tr. 335).  December, 2010 treating notes by Edward Holden, M.D. state that Plaintiff experienced "possible sciatica" (Tr. 334).  Dr. Holden observed a normal affect (Tr. 333).

### 2.   Non-Treating Sources

In June, 2010, Miriam Sherwood performed a non-examining Residual Functional Capacity Assessment on behalf of the SSA (Tr. 302-309).  She found that Plaintiff could lift twenty pounds occasionally and ten frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 303).  Sherwood found that Plaintiff was capable of balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs on a frequent basis but was precluded from *all* climbing of ladders, ropes, or scaffolds (Tr. 304).  Plaintiff was limited to frequent reaching, handling, fingering, and

feeling with the right hand but was able to use the left hand for carrying (Tr. 305). Sherwood found that Plaintiff should avoid even moderate exposure to vibration (Tr. 306). She found Plaintiff's claims of limitation only partially credible, noting that examining records showed no difficulty writing or otherwise using the hands (Tr. 307).

### 3.  Material Submitted After the ALJ's May 12, 2011 Opinion

January, 2011 psychological intake notes state that Plaintiff reported depression and anger issues (Tr. 340). Plaintiff reported that he drank occasionally and enjoyed working out of his garage (Tr. 341). He appeared depressed but exhibited a normal attention span with appropriate thought content (Tr. 343). He was assigned a GAF of 51[3] with a diagnosis ("possibly tentative") of bipolar disorder (Tr. 345).

January and February, 2011 treating notes relating to Plaintiff's physical condition state that his varicose veins were "asymptomatic" (Tr. 349, 352). He exhibited an appropriate mood and affect (Tr. 350, 352). In March, 2011, neurologist M.N. Sabbagh, M.D. addressed Plaintiff's reports of facial numbness, recommending that Plaintiff modify his alcohol and caffeine use (Tr. 355). Dr. Sabbagh observed that Plaintiff exhibited a normal gait and full strength in all extremities (Tr. 354). The physical examination was otherwise unremarkable (Tr. 354). A CT scan of the head was normal except for signs of chronic sinusitis (Tr. 356-357).

---

[3]

A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR*)(4th ed. 2000).

### C. Vocational Expert

VE Timothy Shaner classified Plaintiff's former job as an assembler as unskilled at the medium exertional level and jobs as a machine feeder as unskilled and either medium or heavy[4] (Tr. 554-55).

The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age, education, and work experience:

> [C]onsider an individual . . . who is able to perform work at the light exertional level that does not require fine dexterity. Would there be any unskilled entry-level occupations that this person could perform?

The VE testified that the above described individual could perform the work of an usher (160,000 positions in the national economy); counter clerk (110,000); and assembler (100,000) (Tr. 55). He added that none of the jobs required "more than simple routine repetitious tasks with one or two-step instructions" (Tr. 56). He stated that his testimony did not contradict the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 56).

In response to questioning by Plaintiff's counsel, the VE stated that the jobs would not permit more than one unexcused absence each month (Tr. 56). The VE testified that the above-

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

stated jobs would be precluded by a need to elevate one leg above waist level at unscheduled intervals or being off task 20 percent of the time (Tr. 57).

     **D.    The ALJ's Decision**

ALJ Bunce found that Plaintiff experienced the severe impairments of "carpal tunnel syndrome, Dupuytren's contracture, and varicose veins" but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 29-30). He found that Plaintiff's alleged depression did not create "more than a minimal effect" on Plaintiff's work related abilities (Tr. 30). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for light work that did not require "fine dexterity [] or more than simple, routine, repetitious tasks, with one or two-step instructions" (Tr. 30). Citing the VE's testimony, the ALJ found that Plaintiff could perform the work of an usher, counter clerk, or assembler (Tr. 32).

The ALJ discounted the allegations of disability, noting that while Plaintiff's varicose veins would be "expected to limit . . . standing and walking to some extent," the condition did not preclude the performance of light work (Tr. 31). The ALJ noted that while hand and wrist conditions prevented fine dexterity, Plaintiff had not shown that he was unable to perform tasks requiring gross dexterity (Tr. 31).

## <u>STANDARD OF REVIEW</u>

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and*

*Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations;

4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Credibility Determination

Plaintiff argues that the ALJ erred by discounting the claims of physical and mental limitation. *Plaintiff's Brief* at 6-15, *Docket #8* (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)). On a related note, he argues that the erroneous rejection of his testimony also invalidates the VE's job findings, which he contends were based on an incomplete set of hypothetical limitations. *Id.* at 8-10.[5]

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically

---

[5]

Plaintiff's brief also contains a recitation of the law pertaining to the analysis of a treating source's disability opinion. *Plaintiff's Brief* at 14-16. However, he does not cite any treating source who found him disabled or even imposed greater work restrictions than those found in the hypothetical question or RFC. My own review of the evidence for the relevant period indicates that none of Plaintiff's treating sources opined that he experienced additional restrictions.

acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second

prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity,

persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

objective medical evidence," the testimony must be evaluated "based on a consideration of the

entire case record."*Id.* [6]

ALJ Bunce's credibility analysis does not contain procedural or substantive error.  He

acknowledged the diagnoses CTS and Dupuytren's and allegations of upper extremity limitation

as a result of the conditions (Tr. 31).  The ALJ nonetheless noted that Plaintiff did not receive

treatment for either condition after May, 2010 (Tr. 31).  The ALJ observed that Plaintiff declined

a recommendation for Carpal Tunnel release and did not take pain medication for either

condition (Tr. 31, 52).  However, in deference to records showing some degree of upper

extremity limitation, the ALJ limited Plaintiff to exertionally light work with a preclusion on

activities requiring fine dexterity (Tr. 30).   The ALJ also acknowledged a diagnosis of varicose

---

[6]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the
factors to be considered in making a credibility determination:

  (i) Your daily activities; (ii) The location, duration, frequency, and intensity
  of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv)
  The type, dosage, effectiveness, and side effects of any medication you take
  or have taken to alleviate your pain or other symptoms; (v) treatment, other
  than medication, you receive or have received for relief of your pain or other
  symptoms; (vi) Any measures you use or have used to relieve your pain or
  other symptoms ... and (vii) Other factors concerning your functional
  limitations and restrictions due to pain or other symptoms."

veins but observed that the condition was well controlled with support stockings (Tr. 31).  He noted that Plaintiff's purported need for frequent leg elevation was unsupported by any of the treating records (Tr. 31).  Contrary to Plaintiff's contention, the record before the ALJ did not support the need for restrictions due to psychological conditions (Tr. 319, 333, 335, 337).  Because the ALJ's credibility determination is generously supported by the record and does not contain erroneous findings, it should remain undisturbed.  *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997);  *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

For identical reasons, the ALJ did not err in omitting Plaintiff's unsubstantiated allegations of limitation from the hypothetical question.  *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include rejected allegations in the hypothetical limitations posed to the VE).  Plaintiff's related argument that the VE  provided erroneous job testimony is without merit.  *Plaintiff's Brief* at 13.  While Plaintiff asserts that the job of counter clerk is not an unskilled position, the VE in fact testified correctly that the counter clerk position,  Specific Vocational Preparation ("SVP") 2, was  unskilled (Tr. 55); DOT Code 249.366-010.[7]

---

[7]
        SVP measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."DOT, Appendix C, http://www.occupationalinfo. org/appendxc1.html#II (last visited on November 18, 2013).  A job with an SVP rating of two corresponds to a job that a typical worker can perform after "anything beyond short

### B.  The Sentence Six Material

The administrative transcript also contains records submitted after the ALJ's May 12, 2011 decision (Tr. 339-359).  On October 15, 2012, the Appeals Council found that the records did not provide a basis for reviewing the ALJ's decision (Tr. 2).  Plaintiff argues, in effect, that January, 2011 psychological intake notes containing a diagnosis of bipolar disorder ought to have been considered in crafting the RFC.  *Plaintiff's Brief* at 12.

Where, as here, the Appeals Council denies a claimant's request for a review of an application based on newly submitted material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision."  *Cotton v. Sullivan,* 2 F.3d 692, 696-696 (6th Cir.1993).  Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..."  Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

While Plaintiff cites the newer records in support of remand, he fails to explain why they were not presented to the ALJ prior to the administrative determination.  *Plaintiff's Brief* at 12.  Further, the records do not provide a basis for reconsideration of the administrative decision,

demonstration up to and including 1 month." *Id.*  An SVP of 1 or 2 refers to unskilled work.
SSR 00-04p.

-13-

even assuming that he had provided "good cause" for the tardy submission. While he argues that his alleged psychological limitations were given short shrift by the ALJ, the newer records show only that he attended one intake examination in January, 2011 and received a "possibly tentative" diagnosis of bipolar disorder (Tr. 341-345). Clinical observations from the intake examination showing an appropriate thought process and a cooperative attitude undermine the argument that psychological problems created work-related limitations (Tr. 343). Likewise, medical treating records from the newer period show that Plaintiff generally exhibited an appropriate affect and mood. If anything, the newer records showing that his varicose veins were "asymptomatic" contradicts his testimony that the condition precluded exertionally light work.

In closing, I note that my recommendation to uphold the Commission's decision should not be read to trivialize Plaintiff's physical limitations as a result of CTS and Dupuytren's. However, the ALJ's determination that Plaintiff was nonetheless capable of a significant range of work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

*Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.\ The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  November 20, 2013

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 20, 2013, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla for Michael Williams
Case Manager to the
Honorable R. Steven Whalen

-15-